COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL DOCKET NO.:

**03-5065**

04-10356-WGY

THOMAS J. MCNAMARA,
Complainant

v.

MASSACHUSETTS WATER RESOURCES
AUTHORITY, LEROY WALKER, PETER
YARROSI, CAROLYN FIORE, VICTOR
L'ESPERANCE and KAREN BAILEY,
Individually and in their capacities as Agents
of the Massachusetts Water Resources
Authority,
Respondents

**COMPLAINT AND JURY DEMAND**

## PARTIES

1. Thomas J. McNamara is an individual residing in the City of Lowell, Middlesex County, Commonwealth of Massachusetts.

2. The defendant Massachusetts Water Resources Authority (hereinafter "MWRA") is a Massachusetts public authority established by Chapter 372 of the Acts of 1984. It has a principal place of business in Boston, Suffolk County, Massachusetts.

3. The defendant Leroy Walker, at all times herein relevant, was an agent, servant and employee of the MWRA. He is named both individually and in his capacity as an agent of the MWRA. He resides in Milton, Norfolk County, Massachusetts.

4. The defendant Peter Yarrosi, at all times herein relevant, was an agent, servant and employee of the MWRA. He is named both individually and in his capacity as an agent of the MWRA. He resides in Beverly, Essex County, Massachusetts.

5. The defendant Carolyn Fiore, at all times herein relevant, was an agent, servant and employee of the MWRA. She is named both individually and in her capacity as an agent of the MWRA. She resides in Lexington, Middlesex County, Massachusetts.

6. The defendant Victor L'Esperance, at all times herein relevant, was an agent, servant and employee of the MWRA. He is named both individually and in his capacity as an agent of the MWRA. He resides in Salem, Essex County, Massachusetts.

7. The defendant Karen Bailey, at all times herein relevant, was an agent, servant and employee of the MWRA. She is named both individually and in his capacity as an agent of the MWRA. She resided in Andover, Essex County, Massachusetts.

## FACTS

8. Plaintiff has been employed by the respondent MWRA for more than ten years.

9. Plaintiff is a Veteran of the United States Marines, with service in the Viet-Nam War from 10/68 - 11/69, with primary duties in combat and combat support.

10. In 1996, plaintiff was evaluated by the United States Department of Veterans Affairs and it was determined that he was suffering from Service Related Post Traumatic Stress disorder, resulting in a 30% service related disability.

11. In 1998, the Department of Veterans Affairs increased from 30% to 50% the disabling effect of plaintiff's service related Post Traumatic Stress Disorder.

12. In 1998, plaintiff provided the MWRA with medical documentation of his disability, together with documents supporting that said disability prevented plaintiff from driving a vehicle.

13. Shortly thereafter, plaintiff was ordered by the MWRA to perform a job that required him to drive a Van.

14. Plaintiff requested that the MWRA accommodate his disability by allowing plaintiff to perform job duties that did not require driving.

15. When the MWRA refused to accommodate plaintiff, he filed a complaint with the United States Department of Labor, Office of Federal Contract Compliance, alleging discrimination based on plaintiff's disability in violation of the American's with Disabilities Act, and discrimination in violation of Section 503 of the Rehabilitation Act of 1973.

16. Following the filing of said complaint, Management at the MWRA became hostile toward plaintiff, particularly Leroy Walker, Peter Yarossi, Carolyn Fiore, Karen Bailey and Jonathan Yeo, all of who are MWRA supervisors.

17. Subsequent to the filing the above complaint, but prior to the resolution of same, a member of management, William Lazaris, drafted a memorandum attributing the following statement to Peter Yarossi, Regional Manager: "Tom McNamara hates me and I don't like him. I am out to get him, Carolyn Fiore is out to get him, Karen Bailey is out to get him and Jonathan Yeo is still probably out to get him."

18. Mr. Lazaris reported to his supervisor, Kevin McManus, that Mr. Yarossi was "very serious" when he made the statement about being "out to get" Tom McNamara.

19.  When plaintiff later learned of these statements, he perceived them to be threatening.

20.  Upon information and belief, the MWRA Human Resources Department was informed of the statement of Mr. Yarossi. Human Resources, through Karen Gay Valenti, alleged that they conducted a 6-month investigation into these threats but took no action.

21.  In May 2000 plaintiff withdrew the former complaint alleging discrimination when the MWRA, in negotiations with the Department of Labor, agreed to accommodate his disability.

22.  Thereafter, plaintiff's employers fostered a hostile attitude toward me.

23.  In addition to making statements that they were "out to get me," plaintiff was informed by an MWRA employee that he, plaintiff, was physically restricted to certain areas within the MWRA. Upon information and belief, the restriction was ordered by defendant Peter Yarrosi.

24.  It is common knowledge at MWRA that many employees in plaintiff's department are licensed gun owners, including his supervisor, William Lazaris.

25.  Mr. Lazaris and others have helped to train employees to prepare to obtain firearms licenses.

26.  On January 8, 2001, plaintiff was issued a firearms license by the City of Lowell.

27.  Prior to this date, plaintiff had often discussed firearms with MWRA employees, including his supervisor, Mr. Lazaris, and employee Joseph Bibbo.

28.  On January 9, 2001, plaintiff informed his supervisor and Mr. Bibbo that he received his firearms license, and at that time Mr. Bibbo and plaintiff discussed possible places to purchase a firearm. Mr. Bibbo suggested a store in Woburn, Massachusetts. Upon belief, Peter Yarrosi overheard this conversation.

29.  Over the course of the next two days, Leroy Walker, director of Human Resources, attempted to interview Mr. Bibbo about said conversation relative to possible places to purchase a firearm.

30.  On January 11, 2001, Mr. Walker interviewed Mr. Bibbo.

31.  According to Mr. Bibbo, Mr. Walker asked only if Plaintiff asked him where he could purchase a gun.

32.  When Bibbo replied that he and plaintiff had a conversation about where a licensed individual could purchase a firearm, Walker responded that he wanted to hear nothing further other than whether it was true that such a conversation took place and immediately dismissed Bibbo.

33. Bibbo told Leroy Walker that the conversation was only a conversation between two individuals interested in firearms for sport, and that it was in no way threatening and in no way did plaintiff constitute a danger.

34. Mr. Walker then drafted a letter telling plaintiff that he was placed on administrative leave without pay, effective January 11, 2001.

35. Kevin McManus presented the letter to plaintiff and told McNamara that he would have to be examined for a fitness for duty.

36. In front of many of plaintiff's co-workers, McNamara was immediately escorted off the MWRA premises.

37. Mr. Walker immediately hired a Police Detail to ensure that plaintiff did not return to MWRA.

38. The following day, Mr. Walker circulated a memorandum to MWRA Receptionists and Information Aides stating that plaintiff was not to be allowed on MWRA premises until further notice, and that anyone who saw plaintiff should immediately call "911" and ask the police to contact the police detail officer.

39. The memorandum had attached to it an enlarged photograph of plaintiff's MWRA identification badge.

40. This memorandum was widely viewed by plaintiff's co-workers.

41. Another Viet-Nam veteran, MWRA employee James Murphy, wrote a memorandum to Mr. Walker dated January 16, 2001, complaining that said memorandum and photograph were placed on the fax table in "plain view for everyone to see."

42. On January 12, 2001, due to employee concern about police presence, Mr. Walker held a meeting at 11:15 am and told MWRA employees that he had plaintiff removed and was ordering a fitness for duty exam.

43. According to employees at the meeting, Mr. Walker stated that he had "re-evaluated" the situation and determined that no threat existed.

44. On January 19, 2001, despite the fact that Walker told employees on January 12 that no threat existed, a physician examined plaintiff designated by the MWRA and was deemed fit for duty, and a report confirming it was sent to defendant Walker.

45. Plaintiff was allowed to return to work on January 29, 2001.

46. On February 1, 2001, plaintiff legally purchased a firearm and subsequently went to a shooting range with his supervisor, Mr. Lazaris.

47.     Despite the fact that Walker told employees on January 12 that he felt no threat existed, and despite clearance to return to work on January 29, 2001, on February 13, 2001, Victor L'Esperance, the MWRA security manager, called the State Police and complained about plaintiff.

48.     As a result of the call from defendant L'Esperance, the State Police called Lt. Arthur Boyle of the Lowell Police, License Division, and asked him to call MWRA.

47.     L'Esperance told the Lowell Police that "McNamara had a problem with a woman at work and made statements that he had a gun."

48.     The statement by L'Esperance to the Lowell Police was maliciously false and defamatory.

49.     Lt. Boyle asked plaintiff to turn in his license and firearm pending an investigation.

50.     On February 28, 2001, Lt. Boyle had a conversation with Leroy Walker, during which Walker stated, "he had reports of a complaint made three years ago and a fitness for duty report" which defendant Walker agreed to fax to the Lowell Police.

51.     MWRA never supplied the Lowell Police with evidence of any prior complaints against plaintiff as described by Walker or L'Esperance, nor did they produce documents supporting the allegation that plaintiff had a "problem with a woman."

52.     Upon information and belief, MWRA employees called by Lt. Boyle were specifically instructed not to return Officer Boyle's call, and were told not to speak to the Lowell Police about the situation.

53.     Specifically with respect to the previous paragraph, Lt. Boyle called Kevin McManus to inquire about the allegations against me. Because McManus would have informed Lt. Boyle that the allegations made by the MWRA were false, Kate Murray, of the Executive Office of the MWRA, instructed McManus not to speak to Lt. Boyle. According to the Lt. Boyles report, McManus never returned the Boyle's call.

54.     On March 15, 2001, Lt. Boyle received a call from Jonathan Barnes, who stated he was calling on behalf of Leroy Walker, who told Lt. Boyle that the whole incident was a "misunderstanding."

55.     On March 15, 2001, plaintiff was contacted by the Lowell Police and was told to come pick up his license and legal firearm.

56.     Thereafter, the defendants continued to threaten, harass and retaliate against plaintiff.

57.     The above conduct, culminating with the suspension of plaintiff on January 11, 2001 and subsequent false statements to the Lowell Police was conduct that was part of a pattern of retaliation and harassment, which constitutes a continuing violation of the law.

58. Plaintiff suffered great emotional distress and financial damage to the conduct of the defendants.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

59. To the extent that Plaintiff's Claims arise under G.L. c. 151B, Plaintiff filed a timely complaint with the Massachusetts Commission Against Discrimination, which complaint was ultimately withdrawn in order to file this complaint in the Superior Court Department. See attached MCAD Dismissal Letter (Exhibit A).

## COUNT I – DISABILITY DISCRIMINATION
### All Defendants

60. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

61. The defendants illegally discriminated against Plaintiff based on his Disability in violation of Massachusetts Law.

62. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT 11 – RETALIATION
### All Defendants

63. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

64. The conduct of the defendants constitutes illegal retaliation, both by the defendants individually and in their capacity as agents of the MWRA, due to plaintiff's filing of a previous complaint alleging discrimination based on his service related disability.

65. The defendants' retaliatory conduct caused him to be subject to a severe and continuing pattern of harassment, defamation and disparate treatment due to plaintiff's decision to pursue a complaint of discrimination.

66. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT III – INTERFERENCE WITH RIGHTS
### All Defendants

67. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

68. All defendants interfered with Plaintiff's rights as provided in G.L. c. 151B, and by the Second Amendment to the United States Constitution.

69. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT IV – AIDING AND ABETTING
### All Defendants

70. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

71. All defendants aided and abetted in discrimination, retaliation and interference with rights in violation of G.L. c. 151B.

72. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### All Defendants

73. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

74. The defendants' conduct, including but not limited to their intimidation, defamation, slander and retaliation constitutes conduct which is extreme and outrageous, which has caused plaintiff severe emotional distress in violation of Massachusetts' Law.

75. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT VI – DEFAMATION
### All Defendants

76. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

77. The defendants made and published false statements about plaintiff, thereby exposing him to ridicule or contempt in the community and in his place of employment in violation of Massachusetts' law.

78. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT VII
### Violation of Section 503 of the Rehabilitation Act of 1973, as amended and the Vietnam Era Veteran's Readjustment Assistance Act of 1974, as amended. *38 U.S.C. 4212.*
### All Defendants

79. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

80. The conduct of the Defendants was retaliatory in violation of Executive Order 11246, as amended, Section 503 of the Rehabilitation Act of 1973, as amended and the Vietnam Era Veteran's Readjustment Assistance Act of 1974, as amended. *38 U.S.C. 4212.*

81. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

## COUNT VIII – INVASION OF PRIVACY
### Defendants MWRA and Walker

82. The plaintiff realleges and incorporates by reference his allegations contained in the paragraphs above.

83. The action of the defendants in forwarding medical records to the Lowell Police Department, for the purpose of retaliation and harassment, without my authorization for the release of such records, constitutes an invasion of privacy in violation of the Massachusetts Constitution and its General Laws.

84. As a result of Defendants actions, plaintiff suffered a loss of wages, benefits and reputation, as well as emotional distress and pain.

WHEREFORE THE PLAINTIFF REQUESTS THAT THE COURT ORDER:

a. that the plaintiff be compensated for any loss of wages and or benefits incurred as a result of the unlawful acts;
b. that the plaintiff be awarded an amount of money which will fairly compensate him for the emotional and physical pain and damage to him, including his reputation and earning capacity;
c. that the defendants pay the plaintiff's costs and attorney's fees resulting from this action;
d. that that defendants pay interest on any judgment calculated from the date that plaintiff file his MCAD Complaint;
e. that the defendants pay Punitive Damages; and
f. such relief as the Court deems just and appropriate.

Ex. A

# THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
ONE ASHBURTON PLACE
BOSTON, MA 02108-1518

Tel: (617) 994-6000          TTY: (617) 994-6196          Fax: (617) 994-6024

TO:      File
FR:      Robin Edwards
RE:      Thomas J. McNamara v. MWRA, et al
MCAD #   01BEM1780
EEOC #   16CA12366 (25+ employees)
DATE:    September 30, 2003

## RECOMMENDATION: CASE CLOSURE – WITHDRAWN IN ORDER TO FILE A PRIVATE RIGHT OF ACTION ON THE SAME MATTER IN CIVIL COURT

On June 27, 2001 Complainant filed a complaint with the Massachusetts Commission Against Discrimination. Complainant alleged Respondents discriminated against him on or around February 28, 2001 on the basis of Disability in violation of M.G.L. c.151B §4 (16) ADA and Title VII.

On July 3, 2003 Complainant's Counsel submitted a request to withdraw the complaint from the MCAD in order to pursue the matter as a private right of action in civil court.

The Commission finds no reason to investigate this matter further. Therefore, it is recommended that Complainant be allowed to withdraw this complaint.

Robin Edwards
Administrative Assistant
MCAD, AAU