UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS J. MCNAMARA,<br>Plaintiff<br><br>v.<br><br>MASSACHUSETTS WATER RESOURCES<br>AUTHORITY, LEROY WALKER, PETER<br>YAROSSI, CAROLYN FIORE, VICTOR<br>L'ESPERANCE and KAREN BAILEY,<br>Individually and in their capacities as Agents<br>of the Massachusetts Water Resources<br>Authority,<br>Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. NO. 04-10356WGY |

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

The defendants submit this Memorandum of Law in support of each of the four (4) Motions to Dismiss Plaintiff's Complaint, filed herewith. The defendants seek: (1) dismissal of Count I against the individual defendants; (2) dismissal of all Counts against defendants Karen Bailey, Peter Yarossi and Carolyn Fiore; and (3) dismissal of Counts V against all defendants and VI against all defendants except L'Esperance. As is set forth below, the Complaint is vague, ambiguous, asserts claims that are barred by the applicable statutes of limitation, and otherwise fails to articulate sufficient facts to support a claim against defendants, or were not included in the original charge filed by the plaintiff at the Massachusetts Commission Against Discrimination. Accordingly, defendants request that this Court allow each of the Motions to Dismiss.

## INTRODUCTION

Plaintiff, Thomas McNamara (McNamara), a former employee of defendant Massachusetts Water Resources Authority (MWRA), asserts the following as his claims against all of the named defendants: Disability Discrimination (Count I), Retaliation (Count II), Interference with Rights (Count III), Aiding and Abetting (Count IV), Intentional Infliction of Emotional Distress (Count V), Defamation (Count VI), and Violation of Vietnam Era Veteran's Readjustment Act (Count VII). Count VIII, Invasion of Privacy, is asserted only as to defendants MWRA and Leroy Walker.

In addition to MWRA, the other five defendants are Leroy Walker (Walker), the former Human Resources Director for MWRA; Victor L'Esperance (L'Esperance), MWRA Manager of Security, Peter Yarossi (Yarossi), TRAC , Regional Manager; Carolyn Fiore (Fiore), Director of TRAC; and Karen Bailey, former TRAC Compliance Coordinator. These five (5) defendants are sued as agents of MWRA and in their individual capacities.

There are four (4) Motions to Dismiss pending before the Court. The first is the Motion of the individual defendants to dismiss Count I alleging Disability Discrimination, on the grounds that M.G.L. c. 151B § 4(16) does not provide a claim for individual liability. The second is the Motion of all defendants to dismiss Counts III, IV, V and VI of the Complaint. Counts III and IV were never raised by the plaintiff in his original Charge filed with the MCAD. Count V, alleging Intentional Infliction of Emotional Distress is barred by the exclusivity provision of the Massachusetts Worker's Compensation statute. Count VI should be dismissed as to all defendants (except L'Esperance) since none of the defendants uttered or repeated any defamatory statement about the plaintiff. The third Motion is Karen Bailey's Motion to Dismiss the Complaint. Bailey held no supervisory role with

respect to plaintiff, and the Complaint is devoid of any facts giving rise to liability against her. Finally, Defendants Yarossi and Fiore submit a Motion to Dismiss all counts of the Complaint for failure to articulate any facts to support any claim against them or alternatively request that the Court order the Plaintiff to file a more definite statement.

## II.    FACTUAL BACKGROUND

The MWRA hired the plaintiff Thomas McNamara on December 30, 1990, as a Compliance Coordinator in the MWRA's Toxic Reduction and Compliance Department (TRAC). This position required that the plaintiff draft enforcement actions in the event an industry violates TRAC regulations.

In 1996 the TRAC department was reorganized and the plaintiff and another Compliance Coordinator were made Industrial Coordinators.

On September 12, 1996, plaintiff filed a request for a reasonable accommodation requesting that he be allowed to stay in his Compliance Coordinator position because he suffered from Post Traumatic Stress Disorder (PTSD). (Complt. ¶ 14, Plaintiff's Request for an Accommodation dated September 12, 1996, attached hereto as Exh. A.).

In September of 1998, plaintiff filed a Complaint with the U.S. Department of Labor, Office of Federal Contract Compliance (OFCCP), under the Vietnam Veterans' Readjustment Act alleging discrimination because he was denied a reasonable accommodation and that he was being harassed by the MWRA because he was asked to relocate his workstation. Plaintiff alleged that he suffered from Post Traumatic Stress

Disorder (PTSD) and that he was being harassed. [1] (See Complt. ¶ 15, Exh.; B OFCCP Complt. dated September 10, 1998). Plaintiff alleges that following the filing of his OFCCP Complaint, MWRA management became hostile toward him. (See Complt. ¶ 16).

In December of 1997, the plaintiff at his request, was laterally transferred into the position of Senior Sampling Associate. In April 2000, plaintiff again, at his request, was laterally transferred into a Compliance Coordinator/Inspector position in TRAC and the plaintiff withdrew his OFCCP Complaints. (Complt. ¶ 21).

On January 9, 2001, plaintiff was overheard at work asking a fellow co-worker, "where he could buy a gun." This conversation was reported to the then Director of Human Resources, Leroy Walker, who on January 11, 2001, confirmed McNamara had asked such a question, and placed the plaintiff on an administrative leave pending a fitness for duty exam, while he investigated the matter further. Soon thereafter, the plaintiff was found fit to return to work and he returned to work on January 29, 2001. (Complt. ¶¶ 28-35, 45).

The plaintiff, represented by counsel, presented his underlying discrimination charge to the MCAD on June 25, 2001. Plaintiff removed his case from the MCAD on September 3, 2003, and thereafter filed suit in the Lowell Superior Court on December 9, 2003. The Plaintiff's Complaint was filed on December 9, 2003. The plaintiff served the defendants with the Complaint on January 26, 2004. This Complaint was removed to the United States District Court on February 23, 2004.

---

[1]   On May 14, 1999, plaintiff filed a second Complaint with the OFCCP claiming he was retaliated against for filing his earlier OFCCP Complaint and that he was being harassed. He asserted that he was being retaliated against because the MWRA requested that he undergo a fitness for duty exam to determine if he could drive and because the MWRA conducted an investigation of the plaintiff's threat to kill his supervisor. (See Exhibit B attached hereto.)

III.    ARGUMENT

A.    G.L.c. 151B (16) Does Not Provide For Individual Liability

> G.L. Ch. 151B §4(16) "makes it unlawful [f]or any employer,
> personally or through an agent, to dismiss from employment or
> refuse to hire, rehire or advance in employment or otherwise
> discriminate against, because of his handicap, any person
> alleging to be a qualified handicapped person. ..."

By its plain language G.L. c. 151B (16) relates solely to employers and does not bestow individual liability on the employers' agents or employees. Rather, alternative sections of the statute prohibit individuals from retaliating, aiding and abetting discrimination, or threatening, intimidating, coercing, or interfering with an individual's rights. See G.L. c. 151B § 4(4), 4(4A), and 4(5); See also Woodson v. Town of Norton School Committee, et al., 2003 Mass. Comm. Discrim. Lexis 17; 25 MDLR 62 (Feb. 2003) (Individuals named in this Complaint are not the employer and thus not covered by G. L.c. 151B § 4 (16); MCAD and Nemcrowski v. Northeast Nursery, Inc., 2003 Mass. Comm. Discrim. Lexis 20; 25 MDLR 67 (Feb. 2003) (Individual liability is recognized and imposed under G.L. c. 151B, §§ 4 (4), 4(4A), 4(5)).

B.    Defendants' Motion To Dismiss Counts III and IV, Count V and Count VI

1.    Counts III And IV Were Never Raised In The MCAD Charge

In the plaintiff's MCAD charge filed on June 25, 2001, the sole claim made against these individual defendants was that they retaliated against him in violation of G.L. c. 151B § 4(4) because he had filed an earlier OFCCP Complaint. Plaintiff (who was represented by counsel), never included in his Charge, complaints that the individual defendants aided

and abetted the MWRA in its discriminatory acts[2] under G.L. 151B 4(5), or a claim that any

defendant "interfered" with his rights protected under G.L. c. 151B 4(4A).  At the MCAD

level, plaintiff is required to provide the dates the unlawful discrimination acts took place

and a concise statement of the alleged discriminatory acts.  In his federal Complaint,

Plaintiff provides no factual support for the retaliation claim much less for these two (2)

new claims and as such he should be precluded from raising these new claims in this

lawsuit.[3]  Moreover, the lack of description and core facts is particularly glaring with

respect to Bailey, Yarossi and Fiore.  While the scope of the civil Complaint is limited by not

only the MCAD charge, but also by investigation[4] which can reasonably by expected to

grow out of the charge.  <u>Powers v. Grinnell Corp.</u>, 915, F. 2d 34, 37 (1st Cir. 1990); <u>Conroy v.</u>

<u>Boston Edison Co.</u>, 758 F. Supp. 54, 60 (D. Mass. 1991), given the lack of information in the

MCAD charge, its particularly difficult to see how any cause of action could "grow out of

the MCAD charge.

     Therefore, plaintiff should be precluded from now asserting these new claims  and

Counts III and IV should be dismissed.  See, <u>Lattimore v. Polaroid</u>, 99 F 3d. 456 Mass.

(1996).

---

[2]      While the plaintiff raises this claim in his Complaint for the first time, he provides no information as to how Yarossi and Fiore aided and abetted the MWRA, the other individual defendants or the MWRA in their discriminatory mission.  Likewise with respect to his claim under GL c. 151B (4A), McNamara never identifies how these two(2) defendants interfered with his rights, or when they interfered with his individual rights protected under G.L.151B.

[3]      Defendant's Motion to Dismiss Counts III and IV pertains only to the individual defendants (and therefore not defendant MWRA) for the obvious reason that G.L. c. 152, sec (4A) makes it unlawful "for any <u>person</u> [to] coerce, intimidate, threaten, or interfere….," G.L. c. 152, sec. (5) makes it unlawful "for any <u>person</u> to aid, abet, incite, compel or coerce" the doing of acts forbidden under the Chapter.

[4]      The MCAD did not conduct an investigation.  Plaintiff removed the case before the Commission entered any memorandum describing its investigation.

2.    The Plaintiff's Count V Intentional Infliction Of
Emotional Distress Claim Is Pre-empted By
The Massachusetts Workers' Compensation Act.

The insufficiency of Count V may be established summarily.   The plaintiff's intentional infliction of emotional distress claim is based entirely on events alleged to arise from his employment with the MWRA.  As such, it is clearly pre-empted by the exclusivity provisions of the Massachusetts Workers' Compensation Act.  Mass. G.L. c. 152 et seq.; Green v. Wyman-Gordan Co., 422 Mass. 551, 558-60 (1996); Catalano v. First Essex Savings Bank, 37 Mass. App. Ct 377, 378-81, rev. denied, 419 Mass. 1101 (1994).

In order to pursue a common law action for intentional infliction of emotional harm arising out of the employer-employee relationship, there must first be notice of intent to do so as prescribed in G.L. c. 152, §24, (the Worker's Compensation Act).  Otherwise, the exclusive remedy is a worker's compensation claim.  Doe v. Purity Supreme, Inc., 422 Mass. 563, 565-66 (1996); Green v. Wyman Gordan Company, 422 Mass. 551, 558 (1996).  Here, no notice was sent pursuant to G.L. c. 152, §24, therefore McNamara's claim against the defendants for intentional infliction of emotional distress is barred by the Worker's Compensation Act.[5]  See, Chaudhary v. Taco Bell Corp., 1995 Mass. Super Lexis 11 Dec. 1995.

The Worker's Compensation Act also protects co-employees who commit tortious acts within the course of their employment.  Brown v. Nutter, McClennen & Fish, 45 Mass. App. Ct. 212, (1998) citing Anzalone v. Massachusetts Bay Transmit Authority, 403 Mass. 119, (1998) (supervisor who assigned co-employee to perform "medial and dirty jobs" was

[5]    G.L. c. 152, § 1 (7A) provides that actions which comprise the intentional infliction of emotional harm "shall be deemed to be a personal injury within the meaning of this chapter."  Therefore, with respect to MWRA it is clear plaintiff's claim is barred.

acting in the course of his employment); <u>Fusaro v. Blakely</u>, 40 Mass. App. Ct. 120, 123 (1996) (interrogation by campus police of co-employee was part of investigation and therefore within the scope of their employment).

The Supreme Judicial Court has expressly stated that, in the workers' compensation context, the term "personal injuries" encompasses all forms of emotional distress arising from the employment relationship. <u>Green</u>, 422 Mass. at 558-60. Thus, all common law claims for emotional distress are indisputably pre-empted by the Worker's Compensation Act to the extent that they stem from employment-related activity. <u>Id</u>.

Here, there is no allegation in plaintiff's Complaint that the individual defendants were acting outside the scope of their employment. Indeed the crux of the plaintiff's very vaguely articulated claims are that the defendants, in their respective supervisory capacities, collectively discriminated against him. None of the plaintiff's allegations remotely suggest that the defendants were not serving the MWRA's interests. See also, <u>O'Connell v. Chasdi</u>, 400 Mass. 686, 690 (1989), where unlike the present case, actions in tort will lie where the employee "commits an intentional tort <u>which was in no way within the scope of employment furthering the interests of the employee</u>." (emphasis added); <u>Boyle v. Boston Foundation, Inc.</u>, 788 Supp. 627, 631 (Mass. 1992) (an act is not beyond the scope of employment merely because it is discriminatory.) Moreover, for Plaintiff to claim that defendants were acting outside their scope of employment is contrary to his claim that defendants were aiders and abetters under G.L.c. 151B(5). Because the conduct described by plaintiff is related wholly to their positions as supervisors and the manner in which they exercised their duties as MWRA supervisors, Count V must be dismissed in its entirety as to all defendants.

3.    Count VI Should Be Dismissed Because The
Defendants Did Not Defame The Plaintiff.

Count VI as against defendants Walker, Fiore, Bailey, and Yarossi should be dismissed for failure to state a claim.  Apart from the substantive deficiencies outlined below, the defamation claims do not meet the threshold pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, that averments should be simple, concise and direct. A Complaint for defamation brought in federal court, is sufficient if it "adequately identifies the allegedly defamatory communication".    Daniels v. St. Lukes-Roosevelt Hospital Center, 2003 U.S. Dist Lexis 18772, (S.D.N.Y. Oct. 2003)    Except as to defendant L'Esperance, plaintiff does not identify which statements or communication he relies upon in support of the defamation claims against all other defendants. Defendants are left to the task of deciphering which factual allegations pertain to the defamation count, and which statements or communications Plaintiff is asserting are defamatory.

The elements of a defamation claim are a false and defamatory communication of and concerning the Plaintiff, which is published to a third party. McAvoy v. Shufrin, 401 Mass 593, 597 (1988). Words may be found to be defamatory if they hold plaintiff up to contempt, hatred scorn, or ridicule, or to impair his or her standing in the community.   Poland v. Post Publishing Co., 330 Mass. 701, 704   (1953), (citations omitted).  Words on their face such as dishonest, diseased, insane, bankrupt, which, if true, obviously denigrate the person. Disend v. Meadowbrook School, 33 Mass. App. Ct. 674, 675 (1992).   Additionally, words reasonably susceptible to a defamatory meaning can form the basis of defamation claim. Ellis v. Safety Ins. Co., 41 Mass App. Ct. 630, 635 (1996).

9

a.    Fiore, Bailey And Yarossi Made No Defamatory Statement.

The most indulgent reading of the facts does not support a claim for defamation. The Plaintiff has pleaded nothing, even remotely touching upon an allegation that defendants Fiore and Bailey defamed him. There is no allegation that either Fiore or Bailey made any statement or communication and there is no reasonable expectation of proving an essential element of defamation.

The only allegation of any statement or communication by defendant Yarossi is an alleged comment made in 1998 that he did not like the Plaintiff and that he and others were "out to get" the Plaintiff. This is not as a matter of law defamatory. Yarossi's alleged statement that he did not like plaintiff is unmistakably an opinion, incapable of interpretation in a defamatory sense. Cole v. Westinghouse Broadcast, 386 Mass 303, 310 (1982). See, Foley v. P. & G. Distributing Co., 2003 U.S. Dist. Lexis 12422 (words "I ... hate him" is protected opinion). The statement he and other members of management are out to get the plaintiff is not defamatory and not reasonably susceptible to defamatory meaning.   Whether or not a statement is reasonably susceptible of a defamatory meaning is a threshold matter of law for the Court. Foley v. Lowell Sun Pub. Co., 404 Mass. 9, 11 533 N.E. 2d 196 (1988).

Finally, as discussed in Sec. E of this memorandum below, the alleged Yarossi statement is barred by the three year statue of limitation for tort claims.

b.    As To Defendant Walker.

A summary of the meaning and facts pleaded concerning Leroy Walker, Director of Human Resources, is that Walker received a report that Plaintiff had made a possible

threatening comment about a gun. He verified Plaintiff made the statement, and removed him from the workplace pending a fitness for duty examination. MWRA hired a police detail for the TRAC reception area and Walker informed MWRA receptionists by written memorandum, accompanied by a photocopy of Plaintiff's photograph that Plaintiff was not permitted access to MWRA property until further notice. The memorandum further directed that the police should be called if Plaintiff came on the premises. This memorandum is attached as Exhibit F. Plaintiff's co-worker observed this memorandum laying by a fax machine. Subsequently at a meeting with TRAC employees, Walker informed co-workers that Plaintiff was ordered to have a fitness for duty exam.

The memorandum temporarily denying Plaintiff access to MWRA premises is not reasonably susceptible to a defamatory meaning and even assuming it is defamatory, an employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve an employer's legitimate interest in the fitness of an employee to perform his job. Foley v. Polaroid, 400 Mass. 82, 94-95 (1987). Once the employer's conditional privilege is recognized, the burden shifts to the employee to prove the privilege was abused. Elicier v. Toys "R" Us, Inc., 130 F. Supp. 2d 307, 311 (D. Mass. 2001). The privilege is destroyed if the employer is acting with malice, by excessive publication, or recklessly providing false information. Bratt v. IBM Corp., 392 Mass. 508, 512, 513 (1984). Foley, 400 Mass. 95. There is no allegation Walker's memorandum or statement was false or that he acted with malice. While Plaintiff asserts the memorandum was widely viewed by

11

coworkers because it was laying near a fax machine, there is no allegation that Walker intentionally or recklessly published the memorandum to employees other than to whom it was directed.   Indeed, plaintiff does not claim Walker was responsible for inadvertently placing the memo in a common area.[6]   Even assuming Plaintiff could prove Walker was responsible for memorandum being left near a fax machine, inadvertence, simple negligence, want of sound judgment, or hasty action will not cause loss of privilege.  Dexter's Hearthside Restaurant v. Whitehall, 24 Mass. App. Ct. 217, 222-223 (1987); Andresen v. DiOrio, 349 F. 3d 8, 20, 2003 U.S. App. Lexis 23071. (1st Cir. 2004)

In Mayo v. Dalbar, Inc., 14 Mass. L. Rep. 493; 2002 Mass. Super. Ct. Lexis 145, a case with similar facts as the instant case, the employer, after discharging Mayo notified building security verbally and in a written directive accompanied by Mayo's photograph, to deny Mayo any further access to the building.[7] Mayo claimed the communication to building security personnel, denying her access to the building constituted slander because it implied she should not be trusted to enter the premises. The Court rejected plaintiff's argument, finding the employer's statements were conditionally privileged.  The Court acknowledged a person in lawful control of the premises has the right to admit any visitor and revoke an implied license to enter the premises. The Court noted an employer has an interest in keeping trespassers off its'

---

[6]     In fact, the memorandum specifically states it is "confidential" and that "it is only for the use of the MWRA Receptionists and Information Aides."  The memorandum specifically states the plaintiff has a "reasonable expectation of privacy" and that this "information should not be shared with anyone else."

[7]     Mayo's defamation claim was based on the verbal directive to security personnel. The Court noted the analysis would be the same if claim were based on the memorandum as it is here.

premises, including but not limited to suspended or terminated employees, given the employer may have a legal obligation to protect employees from workplace violence and the like. In order to carry out these obligations an employer must have power to keep trespassers out. Mayo, 14 Mass. L. Rep. 493, 11-12.

Walker, as Human Resources Director, acting upon a concern from Plaintiff's co-worker, acted quickly and reasonably to ensure the safety of the workplace. His communications were necessary to serve the employer's legitimate business interest and there is no allegation the privilege was destroyed by reckless conduct.

Finally, Walker's statement that Plaintiff was suspended pending a fitness for duty examination was not defamatory. Even if a fitness for duty exam could be construed as holding Plaintiff up to ridicule or scorn, the communication was reasonably calculated to serve MWRA's interest in providing minimal information to explain the police presence in TRAC, to reassure employees and reduce gossip at the water cooler. This communication was made to a narrow group who shared an interest in the communication and falls within the employer's conditional privilege.

C.    The Plaintiff's Complaint Against Bailey Should Be Dismissed

1.    Bailey Was Not The Plaintiff's Supervisor.

The plaintiff erroneously claims that defendant Karen Bailey was an MWRA supervisor. (See Complaint, ¶ 16) As stated in the Affidavit of Kevin McManus, former Director of TRAC, (attached hereto as Exh. D), defendant Bailey at all relevant times during

her employ at MWRA never supervised, or directed the plaintiff's work in any capacity.[8]

Moreover, even assuming Bailey was plaintiff's supervisor, as argued below, this

relationship, in and of itself, without more, would not make her individually liable to the

plaintiff.

> 2.     The Complaint Is Devoid Of Any Facts Supporting A
>        Cause Of Action Against Bailey.

While the function of the pleading is to inform a party of the nature of the claims

and defenses being asserted against them as well as the relief demanded by the plaintiff, at

a bare minimum, the plaintiff must plead sufficient facts to put the defendant on notice of

the conduct, events, or occurrences that give rise to the claim. "Plaintiff is obligated to set

forth in [his] Complaint "factual allegations", either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory." Roth

v. United States of America, 952 F. 2d 611, 612 (1st cir. 1991), citations omitted. The Rules of

Civil Procedure contemplate that plaintiff will provide a statement of the circumstances,

occurrences and events in support of the claim being presented. While great generality is

permitted by the Rules, plaintiff has an obligation to provide adequate information

concerning the basis for his claim of relief. "Modern notions of "notice pleading" not

---

[8]     While arguably the McManus Affidavit raises factual issues beyond the four (4) corners of the
Complaint, plaintiff identified Bailey as a supervisor in paragraph 16 of his Complaint and presumably
bases his claim against her on that fact. Moreover, Fed. R. Civ. P. 12(b) by its plain terms states that the
pleader can raise "every defense, in law or fact to a claim for relief". A defense that Bailey has to this
lawsuit is that she was never in a supervisory position over the plaintiff. Alternatively, this Court can
treat defendant Bailey's Motion to Dismiss as a Motion for Summary Judgment under Fed. R. Civ. P. 56.
Finally, the fact that the defendants attached the MCAD Complaint, OFCCP Complaints and the Walker
memo does not covert these motions into a motion for summary judgment. See, Beddall v. State Street
Bank and Trust Co., 137 F. 3d 12 (1st cir. 1998) when Complaint's factual allegations are expressly linked
and dependent upon a document, the document merges into the pleadings and the trial court can review
it in deciding Rule 12(b)(6) motion to dismiss; See also, Edwin v. Blenwood Associates, Inc., 9F. Supp. 2d
70 (Mass. 1998).

withstanding a plaintiff… is required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobile Oil Corp., 851 F. 2d 513, 515 (1st cir. 1988). Unlike the plaintiff's Complaint, the pleading should contain more than a claim for relief. See, Reverend Arcadio Natal, et al. v. The Christian and Missionary Alliance, 878 F. 2d 1575 (1st cir. 1989) "minimal requirements are not tantamount to non-existent requirements" Id. At 1578.

Plaintiff provides Bailey with no notice of the grounds upon which he asserts these claims. The Complaint devoid of any actual basis for the plaintiff's claims that Bailey discriminated against him. In fact, in a Complaint numbering some eighty-four (84) allegations, Bailey is mentioned only three (3) times. (See ¶¶7, 16-17) In paragraph 16 of the Complaint, the plaintiff claims "she is hostile to him" and erroneously identifies her as a supervisor. In paragraph 17, plaintiff merely recounts an alleged quote made by co-defendant Yarossi in March of 2000 stating, "Karen Bailey is out to get him" (meaning McNamara).

The Yarossi comment occurred in March of 2000, well before plaintiff filed his June 2001, MCAD[9] action and almost four (4) years before the plaintiff filed this lawsuit. Standing alone, the untimely comment cannot possibly be actionable given that Bailey did not make it and the comment provides no basis for imposing individual liability on Bailey

---

[9]     Plaintiff alleges that the Yarossi comment was made after he filed his OFCCP Complaint, but before it was resolved in June 2000. The plaintiff by his own admission in his MCAD submission, states that the Yarossi comment was made in March of 2000 and that MWRA, Human Resources Department took six(6) months to investigate it and took no action. (See June 2001 MCAD Compl. attached hereto as Exh. E) This evidence clearly establishes that the plaintiff was aware of the comment and the MWRA's subsequent investigation by August of 2000, yet plaintiff waited until June 2001 to file an MCAD Complaint well beyond the six(6) month statute of limitation.

under G.L.c. 151B(4)(4A)(5). Even assuming the truth of Yarossi's statement, without more, it does not provide Bailey with "notice" of the basis for plaintiffs' claims.

Finally, if plaintiff included Yarossi's comment in his Complaint to illustrate that Bailey harbored discriminatory animus toward him, he fails to allege any retaliatory acts, events, or conduct committed by Bailey during her MWRA employment to buttress these G.L. c. 151B §4 (4), (4A), (5) claims against her. Even if Bailey did not like the plaintiff, that in itself is certainly not unlawful. See, Deluca v. Communications and Power Inc., Inc., et al., 2003 Mass. Super Lexis 224 (The behavior of co-workers who are unsociable and hard to get along with does not, by itself, support a discrimination claim. An employer has no responsibility to provide a worker with a co-worker with whom he will have no interpersonal conflicts.) As such, Bailey should be dismissed from this action.

D.    The Complaint Must Be Dismissed As To Yarossi And Fiore

1.    The Discrimination Claims Against Defendant's Yarossi
And Fiore Are Vague And Fail To State A Claim.

Even assuming that both Fiore and Yarossi supervised the plaintiff during part of his employment in TRAC, the only information contained in his Complaint pertaining to these two (2) defendants also fails to state claims against them.

With respect to Fiore, plaintiff (as with Bailey) devotes a mere two (2) paragraphs to her in his Complaint (See Complt. ¶¶ 16-17). Paragraph 16 claims Fiore was "hostile toward plaintiff", while paragraph 17 again merely recounts the same stale statement Yarossi allegedly made to another TRAC manager, "Carolyn Fiore is out to get him." The Complaint is devoid of any further information as to what acts Fiore allegedly committed

as plaintiff's supervisor giving rise to plaintiff's claim of individual liability against her under G.L.C 151B 4(4), 4(4A), 4(5).

Likewise, with respect to Yarossi, plaintiff relies on the comment Yarossi allegedly made which states in part, "Tom McNamara hates me and I don't like him. I am out to get him...." (Complt. ¶ 17) Plaintiff further states in his Complaint that he perceived this to be a threat (Complt. Para 19) and that it was investigated by Human Resources. (Complt. Para 20) Plaintiff also claims that he was restricted to a "certain areas within the MWRA" because of Yarossi. (Complt. ¶ 23) Yet, he provides no further information about how or when this restriction took place.

Even assuming the truth of the statement and the conduct complained of in ¶ 23, Plaintiff has failed to state a claim against Yarossi. Simply put, the statement, in itself, and the alleged restriction are not unlawful discrimination. There is no information as to what discriminatory action or inaction, Yarossi engaged in that would give rise to individual liability.

### 2.    The Yarossi Comment Is Time Barred.

Assuming arguendo, Yarossi's comment can sustain a discrimination claim, it is untimely. The comment was made in March of 2000, it was reported to Human Resources, who according to plaintiff conducted a six (6) months investigation, but took no action. Under the plaintiff's own timetable this investigation would have concluded by August of 2000. Plaintiff filed his MCAD action on June 25, 2001, some ten(10) month later. As a threshold matter suits alleging violations of G.L. c. 151B must be made within six (6)

months of the occurrence of the challenged conduct.[10] <u>Sereni v. Star Sportswear Mfg. Corp.</u>, 24 Mass. App. Ct. 428, 430 rev. denied, 400 Mass. 1107 (1987); <u>Mouradian v. General Elec. Co.</u>, 23 Mass. App. Ct. 538-540-41, rev. denied, 399 Mass. 1105 (1987). Thus, even assuming Yarossi's statement provides a potential basis for a claim of individual liability against both defendants, the conduct is time barred as it took place more than six (6) months before the MCAD action was filed and more than three (3) years before this action was filed.[11]

The only timely, detailed events described by the plaintiff in the Complaint are contained in Complaint paragraphs 24-58 and recount the so-called "gun incident." [12] These Complaints relate to MWRA decision makers, Walker and L'Esperance, who do not work in TRAC.

### 3.    Plaintiff Has Not Alleged A Hostile Work Environment.

While plaintiff claims that Yarossi and Fiore were "hostile" to him, it is unclear if plaintiff is attempting to allege a hostile work environment claim. Plaintiff has failed to describe any conduct by them to suggest that his work place was riddled with severe or pervasive conduct permeated with discriminatory intimidation, ridicule and insult making it sufficiently severe or pervasive to alter his conditions of employment and create an abusive working environment.

---

[10]    On August 7, 2002, the Massachusetts legislature changed the applicable statute of limitations from 180 to 300 days. See Chapter 233 of the Acts of 2002. This claim was filed on June 25, 2001, and is governed by the old 180 days statute of limitations period. Under G.L. c.151B (9), the plaintiff could have removed the action from the MCAD after ninety (90) days, but not later than three years after the alleged unlawful practice occurred and brought a civil action for damage in superior court. Thus, if the comment is intended by the plaintiff to be an actionable event, the civil action would have had to have been filed by plaintiff by August of 2003 at the latest. Here, plaintiff filed suit in December of 2003.

[11]    Likewise the plaintiff's 1996 request for accommodation and MWRA's 1996 refusal of that accommodation is over eight (8) years old and are untimely and therefore, not actionable.

[12]    Plaintiff also states in ¶ 28 of his Complaint that he believes Yarrosi overheard the conversation, even if true, no illegal discriminatory conduct flowed from that alleged event.

Moreover, if the comment is included in the Complaint as illustrative of the hostile work environment in TRAC, without more, it fails to articulate individual causes of actions against Yarossi, or Fiore for retaliation, aiding and abetting or interference with G.L c. 151B rights. (See <u>Kosereis v. State of Rhode Island, et al.</u>, 331 F3d 207, 216 (R.I. 2003) as a matter of law one incident is insufficient because a "hostile work environment claim generally is not created by a "mere offensive utterance" <u>Id</u>.

Lastly, plaintiff never articulated a hostile work environment claim stemming from his disability in his MCAD charge, and any such attempt by him to now raise this cause of action should not be permitted by this Court. See <u>Lattimore</u>, 99F. 3d 456 (Plaintiff precluded from raising a hostile work environment claim because he failed to allege it at the MCAD and hostile environment harassment is readily distinguishable from "job status" discrimination another type of employment discrimination. When both harassment and "job status" discrimination claims are made, they are analyzed separately).

In summary, plaintiff seeks relief against Yarossi and Fiore under eight (8) causes of action, none of which are supported by any facts, therefore plaintiff's Complaint as to Yarossi and Fiore must be dismissed, or in the alternative this Court should order the plaintiff to provide a more definite statement of the factual events and occurrences upon which the plaintiff relies in asserting claims against both of these defendants.

CONCLUSION

For the foregoing reasons, the MWRA respectfully requests that this Honorable Court dismiss Count I of the Complaint against all individually named defendants, the entire Complaint against the individual defendants Bailey, Fiore and Yarossi, or

19

alternatively order the plaintiff to provide a more definite statement; and finally dismiss

Counts III, IV, V as to all defendants and VI as to all defendants except L'Esperance.[13]

Respectfully Submitted,

MASSACHUSETTS WATER
RESOURCES AUTHORITY,
Defendant

By its attorney,

Bonnie Gillespie-Perry
(BBO #554747)
Senior Staff Counsel
Massachusetts Water Resources
 Authority
Charlestown Navy Yard
100 First Avenue
Boston, MA  02129
(617) 788-1181

Dated:  April 9, 2004

## CERTIFICATE OF SERVICE

I, Bonnie Gillespie-Perry, hereby certify that on the 9th day of April, 2004, I served the foregoing Memorandum Of Law In Support Of Defendants' Motions To Dismiss plaintiff's complaint Pursuant To F.R.C.P. 12(b)(6) by causing a copy to be sent by first class mail to:

Gary G. Nolan, Esq.
Nolan Perroni LLP
133 Merrimack Street
Lowell, Massachusetts 01852

Bonnie Gillespie-Perry

---

[13]    In essence this would trim the plaintiff's Complaint to a disability discrimination claim against the MWRA under G. L. 151B; Plaintiff's claim against all defendants that his rights were interfered with under the Second Amendment to the United States Constitution; claims against all defendants under the Vietnam Era Veteran's Readjustment Assistance Act of 1974, Section 503 of the Rehabilitation Act of 1973; claims against Walker and L'Esperance for retaliation based on disability and invasion of privacy and a claim against L'Esperance for defamation.