This watermark does not appear in the registered version - http://www.clicktoconvert.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
THOMAS J. MCNAMARA,
        Plaintiff

v.                                                    Civil Action No. 04-10356-WGY

MASSACHUSETTS WATER RESOURCES
AUTHORITY, LEROY WALKER, PETER
YARROSI, CAROLYN FIORE, VICTOR
L'ESPERANCE and KAREN BAILEY,
Individually and in their capacities as Agents
of the Massachusetts Water Resources
Authority,
        Defendants
_____

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

NOW COMES the Plaintiff in Opposition to Defendants' Motion to Dismiss. In support hereof, pursuant to Local Rule 7.1(B)(2), Plaintiff relies on his Memorandum of Reasons set forth below.

## STATEMENT OF THE CASE

Plaintiff, Thomas McNamara, is a decorated, disabled Vietnam Veteran of the United States Marine Corps, presently suffering from Post Traumatic Stress Syndrome. He alleges, *inter alia*, that his employer, the Massachusetts Water Resources Authority ("MWRA"), as well as the named individuals, discriminated against him on the basis of his disability in violation of G.L. c. 151B. Plaintiff alleges that the defendants engaged in illegal retaliation in response to his filing a complaint with the U.S. Department of Labor alleging disability discrimination (which complaint was terminated in Complainant's favor[1]). Plaintiff has alleged that the individuals

---

[1] Significantly, subsequent to the filing of this action, the defendant MWRA removed plaintiff from the special position it created for him as an accommodation in settlement of Plaintiff's initial complaint with the Dept. of Labor.

1

This watermark does not appear in the registered version - http://www.clicktoconvert.com

named in the complaint conspired to retaliate and discriminate against him. Because of the defendants' illegal conduct, Plaintiff's level of disability has increased from 30% to 100%.

## ARGUMENT

## STANDARD OF REVIEW

When evaluating the sufficiency of a complaint in the context of a motion to dismiss, the court must take as true the allegations of the complaint, and must draw any inferences from those allegations in the plaintiff's favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A complaint is not subject to dismissal if it could support relief under *any* theory of law. Whitinsville Plaza v. Kotseas, 378 Mass. 85, 89 (1979)(emphasis added).

Under the "notice" pleading standard of Federal Rule of Civil Procedure 8(a), a complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and therefore need not include detailed pleading of the facts. DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

Throughout their joint motion, Defendants' request for dismissal requires an analysis of the factual sufficiency of plaintiff's complaint. It is important to note "that a Rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiff's claims. In appropriate circumstances such a case may be disposed of on a motion for summary judgment under Mass. R. Civ. P. 56(b)." Reardon v. Commissioner of Correction, 20 Mass. App. Ct. 946, 947 (1985). That noted, defendants' arguments are addressed in the order presented in their memorandum.

2

This watermark does not appear in the registered version - http://www.clicktoconvert.com

1.  **THE NAMED INDIVIDUAL DEFENDANTS MAY BE PERSONALLY LIABLE UNDER G.L. c. 151B**

It is settled law in Massachusetts that individual liability is available under G.L. 151B, § 4(4A), which prohibits "any person from interfering with another in the exercise or enjoyment of any right granted or protected by this chapter. *See G.L. 151B, §4(4A )* ) (emphasis added). Consequently, it does not matter whether the statute in certain sections specifies conduct by an employer or employee individually – if an individual interferes with another's exercising of any right protected under the statute, that defendant is liable individually.

Here Chapter 151B grants plaintiff the right to be free from both disability discrimination and unlawful retaliatory conduct. Plaintiff has alleged such unlawful conduct in his complaint against the individual defendants. Because such rights fall within the meaning of "any right granted or protected by this chapter," as defined by §4A, the named defendants are subject to individual liability as provided for in the statute. Moreover, §5 of the statute prohibits any person from aiding, abetting, inciting, or compelling the doing of any act forbidden by c. 151B. See *G.L. 151B, §5*. Plaintiff's complaint alleges such aiding and abetting and interference with rights sufficiently so as to state a claim.

This court has noted the distinction between Federal Disability Law and G.L. 151B in Orell v. UMass Memorial Medical Center, Inc., et al (00-40227-NMG). In its decision denying defendant's motion to dismiss, the Court noted that while an individual may not be liable under Federal anti-discrimination statutes such as the ADA or ADEA, Massachusetts law provides for individual liability. Orell v. UMass Memorial Medical Center, Inc., et al (Gorton, J.) (00-40227-NMG). The Massachusetts Commission Against Discrimination ("MCAD") has also recently addressed the issue of individual liability. In Woodason v. Town of Norton School

3

This watermark does not appear in the registered version - http://www.clicktoconvert.com

<u>Committee</u>, 25 MDLR 62 (2003), the full Commission of the MCAD articulated the following circumstances when employees can be found individually liable for their conduct:

- Where the individuals are alleged perpetrators of unlawful harassment, they may be named as individual respondents, without regard to whether they are supervisors or co-workers.

- Where there is direct evidence of discrimination and the alleged perpetrator was in a supervisory position in which he or she had direct control over the complainant's employment, the individual may be named as acting in deliberate disregard of complainant's rights.

- Where there is only circumstantial evidence of discrimination, employees may be named if: (a) they had the authority or the duty to act on behalf of the employer; (b) their action or failure to act implicated rights under the statute; and (c) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was intent to discriminate or interfere with the complainant's exercise of rights.

See <u>Id</u>. at 62-63.  Accordingly, the defendants named individually are subject to potential individual liability – whether the record ultimately supports such liability is a matter for Summary Judgment, and ultimately for trial.

**2.    COUNTS III AND IV WERE SUFFICIENTLY IDENTIFIED IN THE MCAD CHARGE AS TO BE APPROPRIATELY PLEADED IN PLAINTIFF'S COMPLAINT**

In their brief, Defendants argue that Plaintiff's sole MCAD claim was for unlawful retaliation.  This is not true.  Plaintiff alleged, *inter alia*, the following claims at MCAD which would trigger liability under Counts III and IV:  that the named individual defendants threatened plaintiff (See Exhibit E to Defendants' Memorandum, MCAD Complaint, Par. 9, 10); that the individual defendants failed to investigate complaints by plaintiff of discrimination and threats, slandered and defamed plaintiff, retaliated against plaintiff, and violated plaintiff's privacy rights,  (See Exhibit E to Defendants' Memorandum, MCAD Complaint).  Significantly, Plaintiff

4

This watermark does not appear in the registered version - http://www.clicktoconvert.com

named the exact same defendants, in their exact same capacities, at MCAD as he did in his present complaint.

The question is whether Plaintiff's MCAD charge was adequate to put the parties on notice of the claims of aiding and abetting discrimination and interfering with rights. It was. Under G.L. c. 151B, § 5, prior to filing a claim in state court for employment discrimination, a complainant must file an administrative charge with the MCAD. The MCAD charge, however, is "not a blueprint for the litigation to follow." Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990). Even where a claim was not explicitly included in an agency charge, the claim may survive if it was within the "scope of the investigation," i.e., was based on acts of discrimination that the MCAD investigation "could reasonably be expected to uncover." Davis v. Lucent Tech., Inc., 251 F.3d 227, 233 (1st Cir. 2001). A claim that should have been investigated can still be deemed within the scope "regardless of whether it was actually investigated." Id. at 233.

As this Court noted in *Edwin v. Blenwood Associates, Inc*., "[t]he purpose of the MCAD charge is to initiate the investigation, not to state sufficient facts to make out a prima facie case." Edwin v. Blenwood Associates, Inc., 9 F. Supp. 2d 70, 73 (D. Mass. 1998). Here, the claims presented in Counts II and IV are certainly within the scope of a potential MCAD investigation, as all the same defendants were named and same or similar facts were alleged at MCAD. Entirely consistent with plaintiff's MCAD charge, Counts III and IV of the instant complaint allege that these same defendants interfered with plaintiff's enjoyment of rights provided by c. 151B, and that they aided and abetted in doing an act prohibited by c. 151B.

"Generally, the scope of the charge analysis focuses on the potential investigation that the administrative agency could have conducted based on the charge, not on the actual investigation." Edwin v. Blenwood Associates, Inc., 9 F. Supp. 2d 70, 73 (D.Mass. 1998).

5

This watermark does not appear in the registered version - http://www.clicktoconvert.com

Because plaintiff named the same defendants individually in the MCAD charge, it is reasonable to conclude that any MCAD investigation could have looked into whether those individuals aided and abetted or interfered with plaintiff's rights. We do not have a situation here, such as in Lattimore v. Polaroid, 99 F 3d 456 (Mass. 1996), upon which defendants rely, where a complainant charged two completely separate forms of discrimination (in Lattimore, the plaintiff charged both race based discrimination and handicap discrimination). See Id. Because counts III and IV of McNamara's complaint are within the scope of any potential MCAD investigation, they should not be dismissed.

**3.    PLAINTIFF'S COUNT V INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM, AS APPLICABLE TO THE INDIVIDUAL DEFENDANTS, IS NOT PREEMPTED G.L. c. 152**

Plaintiff concedes that the employer Defendant, Massachusetts Water Resources Authority ("MWRA"), is not a proper defendant under Count V, and agrees that Count V as it pertains to the MWRA only should be dismissed. However, as to the remaining defendants, the claim is properly pleaded and should not be dismissed. Count V of the complaint alleges that defendants' conduct -- slander, intimidation, defamation and retaliation by individual defendants -- constitutes intentional infliction of emotional distress. Contrary to defendants' argument, at this point in the litigation, these individual claims are not barred by the Workers' Compensation Act.

Suits against individual employees are barred by the Workers' Compensation Act only if their conduct was within the scope of employment. Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124 (1988); O'Connell v. Chasdi, 400 Mass. 686, 690 (1989). Thus, a question of fact exists. If a fellow employee commits an intentional tort not related to the interests of the employer, the policies behind the Workers' Compensation Act

6

This watermark does not appear in the registered version - http://www.clicktoconvert.com

would not be served by immunizing the co-employee. O'Connell, 400 Mass. at 690. In order for these defendants to be protected by the exclusivity provision of the Workers' Compensation Act, they would need to have been acting within the scope of their employment to further the interest of the MWRA when they committed the alleged harassing conduct. See Anzalone, 403 Mass. at 124-25. The record in its present state does not support such a conclusion.

Defendants cite Brown v. Nutter, McLellan & Fish, 45 Mass. App. Ct. 212 (1998) in their brief, noting that in Massachusetts, not all intentional torts occurring at work are barred by G.L. c. 152. "Co-employees themselves, are not immunized from suit by the workers' compensation act for tortious acts which they commit outside the scope of their employment, which are unrelated to the interest of the employer. Id. at 216, citing Locke, Workmen's Compensation § 10.5, at 273 (Nason & Wall Supp. 1995). The question then becomes whether the co-employee's purportedly tortious conduct arose within the course of his employment and whether it furthered the employer's interest. Id. "Our case law suggests the necessity of a fact intensive analysis to answer these questions." Id.

Here, as suggested by the Court in Brown, a fact analysis is needed. Perhaps at summary judgment, through such an analysis defendants may be able to demonstrate that the individuals were acting in the scope of their employment so as to defeat this claim. In the context of a 12(b)(6) motion, however, it is sufficient for plaintiff to plead the elements of the tort alleged.

Finally, defendants argue that this claim is inconsistent with his claim that the defendants aided and abetted in discrimination. This argument fails at the outset, for a complaint may demand relief in the alternative and may contain inconsistent allegations. Mass. R. Civ. P. 8 (e) (2). Moreover, their conclusion is based on the erroneous assumption that in order to be an aider and abettor under G.L. 151B, one must be acting in a supervisory capacity. This conclusion is

not necessary. As stated above, in Woodason v. Town of Norton School Committee, 25 MDLR 62 (2003), the MCAD stated that employees can be found individually liable under G.L. c. 151B, §4 for their conduct where they are the alleged perpetrators of unlawful harassment, without regard to whether they are supervisors or co-workers.

Because a fact analysis is required to determine whether any of the conduct alleged occurred outside the scope of the individual defendants' employment, Count V should not be dismissed, except as to the defendant MWRA.

**4. PLAINTIFF'S COUNT VI – DEFAMATION – IS PROPERLY PLEADED AS TO DEFENDANTS WALKER, FIORE, BAILEY AND YAROSSI**

Defendants have moved to dismiss the defamation count against defendants Walker, Bailey, Fiore and Yarossi. This argument is seemingly based on the erroneous assumption that to allege defamation, one must allege that defendants uttered some words susceptible to defamatory interpretation. *See Defendants' Brief, Page 9*. Again, their arguments are premature. As stated above, a rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiff's claims, and such arguments should be made at summary judgment under Mass. R. Civ. P. 56(b). Reardon v. Commissioner of Correction, 20 Mass. App. Ct. 946, 947 (1985).

Here, Plaintiff alleges that the defendants made and published false statements that have exposed plaintiff to contempt and ridicule in the community. Defamation may include spoken words as well as physical conduct. Phelan v. The May Department Stores Co., (Mass. App. Ct. No. 02-P-720, April 21, 2004). Plaintiff alleges not only did some of the defendants speak defamatory words about the plaintiff, to the Lowell Police and to plaintiff's co-workers, but that the individual defendants conspired to impute criminal conduct to plaintiff, that the defendants had the plaintiff removed from his office, called the police to keep plaintiff out of his office,

This watermark does not appear in the registered version - http://www.clicktoconvert.com

restricted his area of movement, posted plaintiff's picture with instructions to call the police if plaintiff entered the premises.

A false statement that "would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community," is defamatory. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975), and imputation of a crime is defamatory per se[2], in that it requires no proof of special damage. Lynch v. Lyons, 303 Mass. 116, 118-119 (1939). The statement must be communicated to at least one person other than the plaintiff to satisfy the publication requirement. Brauer v. Globe Newspaper Co., 351 Mass. 53, 56 (1966). A recent Appeals Court case dealt with the issue of defamation not by written or spoken word, but by communicative physical conduct, i.e., the act of keeping and escorting an individual under guard. Phelan v. The May Department Stores Co., (Mass. App. Ct. No. 02-P-720, April 21, 2004).

In that case, like here, because co-workers witnessed the conduct, the Court affirmed the Trial Court's ruling that "under limited circumstances, viewed in . . . context, conduct, including that mentioned in this case, could constitute a defamatory publication." Id. "We agree that the defendants' conduct in this case, interpreted in the light most favorable to the plaintiff, is communicative of criminal wrongdoing and amounts to a statement for purposes of plaintiff's defamation claim." Id. A long time ago, the Supreme Judicial Court recognized that a gesture may be deemed a statement for purposes of setting forth a claim of defamation. Leonard v. Allen, 11 Cush. 241, 244-245 (1853). Federal courts have also interpreted Massachusetts law to recognize defamation by conduct. Simas v. First Citizens' Fed. Credit Union, 63 F. Supp. 2d 110, 117 (D. Mass. 1999) ("While escorting an employee from the building by itself may not rise

---

[2] Plaintiff's direct manager, William Lazaris, documented false accusations of criminal conduct by the defendant Bailey levied against the plaintiff, and further documented lack of remedial action by other individual defendant. See attached Exhibit A.

This watermark does not appear in the registered version - http://www.clicktoconvert.com

to the level of defamation, when such a move is unprecedented the inference could be made that criminal wrongdoing was involved"). Accordingly, the matter was properly to be left to the jury. Phelan v. The May Department Stores Co., (Mass. App. Ct. No. 02-P-720, April 21, 2004).

Plaintiff's complaint adequately sets out his defamation claim. It should not be dismissed.

### 5. PLAINTIFF'S COUNT VI – DEFAMATION – IS PROPERLY PLEADED AS TO DEFENDANT WALKER

Defendants argue that even if defendant Walker's conduct was defamatory, it was privileged as furthering the interest of plaintiff's employer. Again their argument is premature, as a factual analysis is needed to establish the existence of the privilege claimed, and to then evaluate whether plaintiff can meet his burden to show the defendant abused the privilege.

A person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest. Bratt v. International Business Machines Corp., 392 Mass 508, 512-13 (1984). Such a privilege may be lost by "unnecessary, unreasonable or excessive publication of the defamatory matter." Id. at 515-16. Consequently, an employer can lose this privilege only if the plaintiff proves that the disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for truth or falsity of the information. Id.

The burden is upon the defendants to show facts which create the qualified privilege. Id. at 134. Once the defendants establish their qualified privilege the burden then shifts back to the plaintiff to prove that the privilege has been abused. Humphrey, 18 Mass.App.Ct. at 134, *citing* Retailers Commercial Agency, Inc., petitioner, 342 Mass. 515, 520 (1961). A Massachusetts Superior Court recently dealt with this issue. In Winsmann v. Choate Health Management, Inc.,

10

This watermark does not appear in the registered version - http://www.clicktoconvert.com

8 Mass. L. Rptr. 480 (1998, Brassard, J.) the Court denied defendants motion to dismiss, stating that:

> [t]he Court is "confined to evaluating the sufficiency of the complaint," and in order for the defendants to show facts which create the qualified privilege, additional materials containing relevant, factual information, would need to be considered. This is not the proper vehicle to attack the plaintiff's defamation claims. See generally Reardon v. Comm'r of Correction, 20 Mass.App.Ct. 946, 947 (1985) ("a rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of plaintiff's claims"; a motion for summary judgment is more appropriate). Winsmann v. Choate Health Management, Inc., 8 Mass. L. Rptr. 480 (1998, Brassard, J.).

Here, like all of plaintiff's claims, the allegations are sufficient under notice pleading rules, as plaintiff has alleged defendant published a false and defamatory statement. As stated above, the "notice" pleading standard of Federal Rule of Civil Procedure 8(a), requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and therefore need not include detailed pleading of the facts. DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

Additional facts are required for defendant to meet their burden of establishing a privilege. If they are successful, the burden shifts to plaintiff and more facts are needed to examine if plaintiff can overcome the privilege. Because the record is not yet complete, a motion to dismiss is not the proper vehicle to deal with defendants' arguments in their present form. Accordingly, their motion should be denied.

**6.      PLAINTIFF'S CLAIMS ARE PROPERLY PLEADED AS TO DEFENDANT BAILEY**

In their brief, subsection C, page 13, et seq., Defendants again ask the Court to make factual analysis not appropriate for a Motion to Dismiss – they supply an affidavit in support of their assertion that the defendant Bailey was not plaintiff's supervisor. As discussed above, whether or not Bailey was plaintiff's supervisor is irrelevant, as individual liability can attach

11

This watermark does not appear in the registered version - http://www.clicktoconvert.com

under other circumstances. *See Plaintiff's Argument set forth herein on Page 2, Subheading 1*. Moreover, defendants' factual basis, as supported by affidavit, is incorrect. Defendant Bailey did in fact have supervisory authority over plaintiff. To that end, See Affidavit of Plaintiff attached hereto as Exhibit B.

Plaintiff has alleged hostile, retaliatory, defamatory and other conduct sufficiently to state the claims set forth in the complaint as to this defendant. Again, the complaint "need not include detailed pleading of the facts." DM Research, Inc., 170 F.3d 53, 55 (1st Cir. 1999). Defendants were sufficiently put on notice of these claims through both this complaint and the complaint filed with the MCAD. Plaintiff alleges that defendant Bailey engaged in continuously hostile and retaliatory conduct. Plaintiff also refers in his complaint to Memoranda written by a defendant MWRA manager as evidence of some of the illegal conduct alleged in the complaint. This conduct involved false complaints filed by defendant Bailey about Plaintiff, as well as failure by the other named defendants' to investigate and remedy these false complaints. Defendant Bailey was named an individual respondent in the MCAD charge. "The purpose of the MCAD filing requirement is simply to provide defendants with notice of a potential suit, and an opportunity to conciliate and investigate the claim. Carter v. Comm'r. of Correction, 43 Mass. App. Ct. 212, 217 (1997). This purpose was fulfilled by plaintiff's MCAD filing.

Where an individual party's conduct is put in issue by in MCAD charge, and, as here, that individual had notice and opportunity to investigate and conciliate the claim, a subsequent civil action will not be precluded. Chatman v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 235 (D.Mass 1997). Consistent with the purpose of the MCAD filing requirement, defendant Bailey was given the opportunity to investigate and conciliate this matter. Bailey claims now that she had no way of knowing the nature of the claim against her. It may be that

12

This watermark does not appear in the registered version - http://www.clicktoconvert.com

she failed to take the opportunity to investigate and conciliate the claim because separate counsel never appeared on her behalf. Perhaps she did investigate the claim and has knowledge of detailed facts – we do not know because, at this point in the litigation, the record is not complete.

Whatever the case may be, proper notice was given, and the present complaint properly alleges the elements of the claims. Accordingly, no counts against the defendant Bailey should be dismissed.

7.  **PLAINTIFF'S CLAIMS ARE PROPERLY PLEADED AS TO DEFENDANTS YAROSSI AND FIORE**

Again, the defendants are requesting that the Court look beyond the well-pleaded elements set forth in the complaint, and conduct a detailed factual analysis. Each count pleaded sets forth the prima facie case against these defendants. A complaint is not subject to dismissal if it could support relief under any theory of law. Whitinsville Plaza v. Kotseas, 378 Mass. 85, 89 (1979). Defendants again claim erroneously the requirement that a supervisory relationship exist to impose liability. This issue having been dealt with above, and the proper elements of each claim being present in the complaint, the Counts against these defendants should remain.

8.  **THE YAROSSI COMMENT IS EVIDENCE OF DISCRMINATION, AND NO CLAIMS FLOWING THEREFROM ARE TIME BARRED.**

Defendants state that because a particular Memorandum is dated March 2000, the counts relating to the individuals named in the memorandum are untimely. Defendants attempt to buttress their argument by the fact that Plaintiff complained about the threats contained in that Memorandum, and after six months defendants failed to provide a remedy. Plaintiff's complaint references that memorandum, in which comments are attributed to defendant Yarossi stating he does not like plaintiff, and that he is "out to get" plaintiff. Yarossi also states that other named defendants do not like plaintiff and are also out to get him. In that memorandum, its author,

This watermark does not appear in the registered version - http://www.clicktoconvert.com

plaintiff's supervisor, William Lazaris ("Lazaris"), states that he "was not going to let those people (the defendants) "railroad" plaintiff. Lazaris, MWRA Management, indicates that the named defendants were failing to investigate false complaints levied by Bailey and others against McNamara, and that this failure was causing plaintiff stress.

The relevant inquiry at this point is whether McNamara has properly set forth a prima facie case. He has. The memorandum, authored by a member of MWRA management, merely exposes the attitudes of these individuals and is evidence of discrimination – it is not the seminal act triggering the start of the statute of limitations. As alleged in the complaint, the defendants' retaliatory conduct was continuing in nature. Moreover, until he was actually suspended, it is reasonable to infer that McNamara thought that the alleged harassment could be successfully remedied without litigation, particularly where his boss, Lazaris, insisted that he would not let the defendants "railroad" plaintiff.

In Cuddyer v. Stop & Shop, 434 Mass. 521, 537-38 (2001), the SJC stated made clear its liberal application of the Continuing violation doctrine:

> "We decline to adopt the Federal precedent relied on by the defendant with respect to the application of the continuing violation doctrine to claims of hostile work environment sexual harassment under G. L. c. 151B. As explained above, if the Federal revelatory standard were in force under G. L. c. 151B, a plaintiff who fails to file a complaint with the MCAD within six months of first realizing that she has been subjected to sexual harassment that could form the basis for a lawsuit and appears to be of a continuing nature, forfeits her right to allege misconduct. This approach provides a strong incentive for an employee to file a complaint with the MCAD when she first suspects that she may have been a victim of unlawful discrimination. If the employee waits longer than six months to determine whether the harassment will stop, or works with her employer to stop it, or to discover whether the harassment will deteriorate from bad to intolerable, she risks losing her ability to seek legal relief. This result is fair neither to the employee, who may be forced prematurely to choose litigation as a remedy, nor to the employer, who has a legitimate interest in attempting to resolve allegations of harassment short of time-consuming and expensive litigation. Id.

The Court went on to hold that "a requirement that a plaintiff precisely ascertain the date on which her situation is legally converted into an actionable hostile work environment improperly intertwines the substantive law of hostile work environment with the statute of limitations question." Id. In its decision denying Summary Judgment for the defendant, the Court stated that it was a jury question as to whether one incident, accompanied by continuing hostility, triggered the plaintiff's physical and emotional breakdown and furnished the catalyst for her full comprehension that a pattern of long-standing discrimination existed that was unlikely to be successfully remedied. Id.

McNamara alleges that the individual respondents conspired against him and fostered hostile attitudes toward him because he was disabled and because he filed a complaint alleging disability discrimination. Plaintiff alleges that all defendants participated in a severe and continuing pattern of harassment, defamation, retaliation, and disparate treatment. The instant complaint states that subsequent to the filing of the complaint with the Department of Labor, those individuals retaliated against him, culminating with the suspension of McNamara on January 11, 2001, and false report to the Lowell Police in February 2001. The MCAD complaint was filed only four (4) months after the alleged false police report.

Office rumors and negative remarks, though they might someday be used as evidence of discrimination, do not trigger a statute of limitations until such time as tangible harm is imposed on the plaintiff. Thomas v. Kodak, 18 F. Supp. 2d 129, 134-35 (D. Mass. 1998). The seminal tangible harm imposed on McNamara was his suspension. The statute of limitations, at the earliest, began to run on or about January 11, 2001.

15

Defendants' joint claims are premature. Other than Plaintiff's claim against the Defendant MWRA for Intentional Infliction of Emotional Distress, all other claims asserted against should remain, with the issues to be revisited at the summary judgment stage.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion be denied, with the exception of Count V as to the defendant Massachusetts Water Resources Authority.

Thomas J. McNamara,
By his attorney,

/s/_____
Gary G. Nolan
BBO#:634907
Nolan | Perroni, LLP
133 Merrimack Street
Lowell, MA 01852
(978) 454-3800

## EXHIBIT A

1/04/02

On 12/20/01, Janet Crowley told me she observed Tom being rude to Margareth Jackson when he asked her to do some copying and mailing of MWRA documents. In addition to being rude, he allegedly threw the papers on her desk. I spoke to Tom on the 21st at which time he categorically denied doing any such thing. While on my way to discuss this issue with Margareth, she was on her way to my office to see me. She told me that it did not happen the way Janet said it did. She said Tom has always been polite with her. Both Margareth and I walked over to Tom's cubicle and we had a discussion with him. Again, Margareth said nothing of the kind had transpired between her and Tom with regard to Janet's explanation. Margareth reiterated to Tom that she had no problem with him.

1/11/02

On 12/24/01, I wrote a memo to Carolyn Fiore and Rick Trubiano explaining that Karen Bailey went to Tom's cubicle and had a discussion with him claiming that he was stalking her and that he was a coward because he would not talk to her. In my memo I had asked that this incident be immediately investigated. In my one-on-one with Carolyn on 12/27, we had a discussion about it. Carolyn asked me why I requested an investigation. I replied that this issue has been tearing TRAC apart for 10 years and has been ongoing ever since I was Tom's supervisor since May 1997. I indicated that I wanted it to stop. I also asked her to speak to Karen to find out what it is that Tom is doing that Karen is characterizing as stalking. Carolyn said she would speak to her.

In our follow-up discussion today, Carolyn stated that there would be no additional action taken on this matter. She said Rick Trubiano forwarded a copy of my memo to Karen Gay-Valente. According to Carolyn, Karen Gay-Valente called her and said that she did not want to get in the middle of this. I replied that I find this strange since we have one employee accusing another of stalking her, which is a felony in Massachusetts. Carolyn replied that it's a felony only if convicted of it and Karen Bailey did not file a formal complaint. I replied that I'm aware of that, however, this still comes under the title of harassment, which is supposed to be reported to management and HR for investigation. I asked her what is was that Karen Bailey described as stalking. Carolyn said one morning as Karen was arriving for work, Tom looked at her, then looked at his watch and then back up to her as if he were commenting on her work hours. Carolyn said that Karen said Tom knows how to set off her buttons, which is the reason she used for going to Tom's cubicle. Carolyn said that she told Karen to just ignore him. Carolyn then ended the conversation

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS J. MCNAMARA,
    Complainant

v.

Civil Action No. 04-10356-WGY

MASSACHUSETTS WATER RESOURCES
AUTHORITY, LEROY WALKER, PETER
YARROSI, CAROLYN FIORE, VICTOR
L'ESPERANCE and KAREN BAILEY,
Individually and in their capacities as Agents
of the Massachusetts Water Resources
Authority,
    Defendants

## AFFIDAVIT OF PLAINTIFF THOMAS J. McNAMARA

I, Thomas J. McNamara, hereby depose and state as follows:

1. I am the plaintiff in this action and have alleged that certain defendants, including defendant Karen Bailey, among other things, engaged in a pattern of continuous and ongoing harassment and retaliatory conduct toward me;

2. I was employed at the defendant Massachusetts Water Resources Authority ("MWRA") from approximately 1990 through March 2003;

3. Prior to my departure, and at times relevant to the allegations set forth in my complaint, the defendant Karen Bailey was charged with the supervisory responsibilities relative to my work product, and overseeing my workload.

4. During the relevant period of the complaint allegations, Bailey was promoted to the position of Acting Enforcement Manager, which carries a Moses Pay Grade of 25, two pay grades higher than my own, and during such time reviewed my work product and regulated and monitored my day to day activities.

Signed under the pains and penalties of perjury this 29th day of April 2003.

                                                                              *[signature]*
                                                                       Thomas J. McNamara

This watermark does not appear in the registered version - http://www.clicktoconvert.com